IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 06-5E |
| | ) |
| MICHAEL ALLEN WEBB, | ) |

## OPINION

COHILL, D.J.

Defendant Michael Allen Webb is charged in a one-count indictment with possession of pseudoephedrine, when he knew or had reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841 (c) (2).

On October 2, 2006, the undersigned heard oral argument on Defendant's motion to suppress an incriminating statement he made to a law enforcement officer about the incident (Doc. 30). Defendant was represented by Thomas Patton, Assistant Federal Public Defender. The government was represented by Assistant United States Attorney Christian Trabold. The government presented the testimony of Pennsylvania State Police Trooper William McLellan. Matt Lewandowski, Adult Probation Officer for Crawford County, Pennsylvania, testified for the Defendant. Following the hearing, the Court took the motion under advisement.

Having now considered the testimony along with the submissions of the parties and the applicable law, for the reasons set forth below we will deny this motion.

### Background

The charges against Webb arise from an incident on the evening of October 1, 2004, when the Defendant was a passenger in a stolen car that ended up in a ditch and attracted the attention of the Pennsylvania State Police. A check run at the scene showed that Webb was on probation and parole in Crawford County. He had prior convictions for manufacturing a controlled substance, possession of controlled substances, fleeing and eluding a police officer, possession of drug

paraphernalia, and recklessly endangering another person. Webb was taken into custody on a probation detainer, and released within forty-eight hours without having either his parole or probation revoked.

State Troopers at the scene questioned Webb about a backpack containing items of drug paraphernalia, methamphetamine, and cold pills containing a combined weight of 32.2 grams of pseudoephedrine. Webb said that it was not his.

On January 4, 2006, Pennsylvania State Police Trooper William McLellan contacted Matt Lewandowski, Crawford County Adult Probation Officer, who was Webb's probation officer. McLellan asked for the Defendant's address, and learned that Webb had a scheduled office visit at 1:00 p.m. that afternoon. Trooper McLellan asked permission to speak with Webb at the probation meeting about two prior incidents, one being the October 1, 2004 incident. Trooper McLellan explained that the probation office was neutral ground, and that the location was easier for both himself and the Defendant. Officer Lewandowski agreed to let Trooper McLellan question Webb at his office.

Trooper McLellan was present at the probation office when Webb arrived for his regularly scheduled appointment. Lewandowski met with Webb before McLellan entered the room and told him that the Trooper wanted to ask him some questions. He did not tell Webb that he had to speak with the Trooper, nor did he tell him that he did not have to do so. When Trooper McLellan entered the office, he introduced himself and showed his identification. Lewandowski closed the door, and stayed in the office during the interview. No weapon was visible. McLellan asked if Webb remembered speaking with him before; at first Webb said that he didn't remember, but after a few minutes he did.

McLellan testified that he informed Webb that he was not under arrest. He was not told that he could leave. McLellan asked if Webb was aware of his *Miranda* rights, and Webb stated that he was. Trooper McLellan asked if Webb wanted to hear his *Miranda* rights, and Webb said that he did not. Trooper McLellan asked if Webb would speak to him about a couple of incidents,

and Webb agreed. Webb first denied ownership of the backpack, but later in the interview he acknowledged that it was his. They talked for less than half an hour. Webb was not restrained in any way, and there was no confrontation. No threats were made. Trooper McLellan then left Webb in Lewandowski's office for the rest of his regular probation supervision meeting.

Lewandowski testified that he and Webb had regular meetings every two weeks. During a normal office visit, Lewandowski would question him on the status of his employment, residence, and generally ask how things were going. At the end of the meeting Lewandowski would give Webb a piece of paper stating the day and time of his next appointment. If Webb was to be drug tested, Lewandowski would obtain a sample. Then Webb would leave. If Webb failed to show up for a scheduled appointment, his probation and parole could be revoked. A probation officer has the authority to jail a supervisee for up to forty-eight hours for violating conditions probation or parole.

The record shows that Webb had twice had his supervision revoked. (Def.'s Ex. A, C). He was placed in a holding cell for forty-eight hours after testing positive for narcotics. When he continued to test positive for marijuana and methamphetamine, his probation and parole were revoked and he was given a three month jail sentence. He was on probation for that offense when he was questioned by Trooper McLellan.

Lewandowski testified that he conducted most of the usual office visit with Webb before McLellan entered the room, but that he had not yet given him the date of the next appointment. He did not tell Webb that he had to answer the trooper's questions. McLellan and Webb talked for about five minutes. During that time, Trooper McLellan did not yell, raise his voice, or show his weapon. Webb did not seem to be upset after the interview was completed.

### Motion to Suppress

Defendant argues that his statement to Trooper McLellan must be suppressed because he was subjected to custodial interrogation without being given his *Miranda* warnings, and because the statement he made was not voluntary.

3

**Webb was not subjected to custodial interrogation**

*Miranda* warnings are required where a person is questioned by law enforcement after being "taken into custody or otherwise deprived of his freedom of action in any significant way." Before law enforcement officers may conduct a custodial interrogation, they must inform an individual of his right to remain silent, to have an attorney present during questioning, and that any statements may be used against him to secure a conviction. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

However, *Miranda* requires warnings only when the individual being questioned is in custody. *Miranda v. Arizona*, 384 U.S. 436, 468 (1966). "Police officers are not required to administer *Miranda* warnings to everyone whom they question." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). A person is in custody when he is arrested formally or when his freedom of movement is restricted to "the degree associated with a formal arrest." *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999).

"For a person to be in custody when he has not been arrested, 'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006) (quoting *Stiegler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974)). Moreover, "the mere fact that an investigation has focused on a suspect does not trigger the need for *Miranda* warnings in noncustodial settings, and the probation officer's knowledge and intent have no bearing on the outcome of the case." *Minnesota v. Murphy*, 465 U.S. 429, 430-31 (1984).

Whether an individual is in custody is not determined by his subjective belief that he is not free to leave. A court must consider whether a reasonable person would have felt free to end the interview. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

When making this determination, courts have considered a variety of factors including: "(1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or

4

physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning." *United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006).

The government refers us to *Minnesota v. Murphy*, 465 U.S. 429 (1984), in which a defendant confessed a rape and murder to his probation officer in her office. In that case, the Supreme Court found that the defendant was not in custody when he confessed, and that his statements were neither compelled nor involuntary. *Id.* at 424. The Court held that a statement made by a probationer to a probation officer without *Miranda* warnings was admissible. The Court reasoned that a defendant's obligation to appear before the probation officer "and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones." *Id.* at 427.

Webb argues that he was in custody when he was questioned by Trooper McLellan. In support of that argument, Webb has filed an affidavit stating that " [w]hen my Probation Officer informed me that a Pennsylvania State Police Officer wanted to speak to me, and then stayed in the room during the interview, I did not believe I could refuse to answer the questions without risking another Probation Violation and returning to jail." (Def.'s Ex. E). However, it is well settled that an individual's subjective belief that he was not free to leave does not establish a custodial interrogation. *Berkemer*, 468 U.S. at 442.

Webb also refers us to *United States v. Ollie*, a decision from the Eighth Circuit. 442 F.3d 1135 (8th Cir. 2006). In that case, the police wanted to talk with Ollie about a handgun found at his girlfriend's house. The officer contacted Ollie's probation officer, who agreed to order Ollie to go to the police station the next day after his regularly scheduled probation meeting. The probation officer ordered Ollie to go to the station after the meeting, where he was interviewed without being given his *Miranda* warnings. He was told that he was not under arrest, but was not told that he could refuse to answer questions. Ollie twice said that he did not own or possess a gun, but when

the officer asked if he would continue to deny it if told that his fingerprints were on the weapon, Ollie admitted that he had handled the gun. *Id.* at 1137-38. He then agreed to make a written statement, and was given his *Miranda* warnings. The court of appeals concluded that Ollie was in custody when he made the oral confession, and therefore it should have been suppressed. The court reasoned that Ollie was not at the station voluntarily, but because he had been ordered to go there by his probation officer. The court put great weight on the fact that the statement was made in a "police-dominated" setting, the police station. *Id.* at 1139.

*Ollie* is easily distinguishable from the case before us. The two strong factors which led the Eighth Circuit to conclude that he was in custody are absent here: Webb's probation officer did not order him to speak with Trooper McLellan, and the interrogation did not take place in a police station.

We find the testimony of both Trooper McLellan and Lewandowski to be credible regarding the circumstances of Webb's interrogation. Although there is no evidence that Webb was told either that he was free to leave if he wanted to or that he was not free to leave, Webb was informed that he was not under arrest. He was not told that he was required to answer the trooper's questions. He was not taken to the police station for this interrogation; instead, he was questioned at his probation officer's office, a place that was familiar to him. Furthermore, the questioning was brief; Trooper McLellan testified that it lasted less than half an hour, and Lewandowski testified that it lasted about five minutes. There is no evidence that Trooper McLellan ever raised his voice or threatened the Defendant. No weapons were displayed. There was no confrontation. Webb was not restrained. He did not resist being questioned when his probation officer told him the trooper wanted to ask him some questions, and he did not appear to Lewandowski to be upset during or at the conclusion of the interrogation.

Considering all of the circumstances, we find that Webb was not in custody when he was questioned by Trooper McLellan, and therefore the fact that *Miranda* warnings were not given does not bar his statements to the trooper.

**Webb's statements were voluntary**

For a confession or inculpatory statement to be admissible, the government must also establish that the statement was made voluntarily.

Voluntariness is assessed by looking at the totality of the surrounding circumstances, including "both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). "[T]he question in each case is whether the defendant's will was overborne at the time he confessed." *Hayes v. Washington*, 373 U.S. 503, 513 (1963). Factors to be considered include "the youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986).

A statement is compelled only where the authorities expressly or implicitly threaten to punish the suspect unless he speaks. *Ollie*, 442 F.3d at 1139 (citing *Murphy*, 465 U.S. at 435-38). The Supreme Court observed in *Murphy* that a defendant's general obligation to appear before his probation officer and truthfully answer questions was not enough to convert an otherwise voluntary statement into one that was compelled. 465 U.S. at 427.

Webb's argument that he was not present voluntarily because he was required to appear at the probation office and give truthful answers or suffer the consequences of parole and probation violations, and thus his statements were not voluntarily made, was rejected by the Supreme Court in *Murphy*. Considering the totality of the circumstances, we find absolutely no evidence that Webb's will was overborne. He was not in custody. The questioning was brief and in a familiar setting. No weapons were shown, and he was not subjected to threats or coercion of any sort. There was no confrontation. We conclude that Webb's statements were voluntarily made and are admissible against him at trial.

Accordingly, Defendant's motion to suppress will be denied. An appropriate Order

...

follows.

Nov. 9, 2006
Date

Maurice B. Cohill, Jr.
Senior United States District Judge